

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00004-CR

_____

JOSE AGUILLEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2014-1278-C1

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Chief Justice Morriss

OPINION

Jose Aguillen's McClennan County[1] jury trial for two counts of indecency with a child by contact established pretty clearly that Aguillen had been physically abusive with various minors within his household, including E.O., his alleged victim of indecency. Over Aguillen's repeated objections, a number of incidents of physical abuse of other minors in the home were admitted into evidence. The jury found Aguillen guilty of the two counts of indecency, and he was sentenced to twenty years' imprisonment for each count, to run consecutively.[2]

On appeal, Aguillen argues that the admitted evidence of his alleged extraneous acts of physical abuse was harmful error, as was the admitted outcry testimony. Because admitting the extraneous-offense evidence was harmful error, we reverse the judgment of the trial court and remand this case to the trial court for a new trial.

In 2014, the State indicted Aguillen for two charges of indecency with E.O. by contact.[3,4] At trial, E.O.'s fourth-grade teacher, Amber Pearson, testified that E.O. was a good student, but that, when her grades fell, Pearson asked E.O. how things were at home. In response, E.O. "burst

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Because this is a transfer case, we apply the precedent of the Tenth Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2]The trial court orally ordered Aguillen's sentences to run consecutively.

[3]The indictment against Aguillen alleged that the offenses occurred on or about October 1, 2012, and February 1, 2013. In both instances, Aguillen was alleged to have "then and there, with the intent to arouse or gratify the sexual desire of any person, engage[d] in sexual contact with [E.O.], by touching the genitals of [E.O.], a child younger than 17 years of age."

[4]We refer to the complainant and any other child witness by a pseudonym or initials in order to protect their identity. TEX. R. APP. P. 9.10.

into tears and started crying and crying. . . .” According to Pearson, E.O. told her “that she was scared for her siblings and that she didn't want to go home.”[5] E.O. “was scared for her siblings because [Aguillen] hurt them sometimes.” E.O. told Pearson that, when her little sister refused to eat dinner and then later became hungry, Aguillen kicked her in her stomach. E.O. also told

---

[5]At this juncture, Aguillen objected to Pearson's testimony, stating,

> I have to do this for the record. We object to the introduction of any extraneous offenses, Your Honor. This is irrelevant under the Texas Rules of Evidence, Rules 401, 402, 403, and 404(b). It's a violation of due process, a violation of due course of law under the Texas Constitution. We feel that any of this evidence coming in should be excluded because its probative value is outweighed by the danger of unfair prejudice under Rule 403 of the Texas Rules of Evidence. Furthermore, it's irrelevant and immaterial. Its probative value outweighs the danger of unfair prejudice. It's unfair. It's evidence of character and character trait under Rule 404, and it's evidence of crimes, wrongs, or other acts under 404b(1). Furthermore, it's hearsay, and it's also a violation of the right to confrontation guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution.

The trial court then asked the jury to leave the courtroom at which time it explained its rationale for its ruling, stating,

> I want the record to be clear about the Court's ruling. Thirty-eight, thirty-seven (38.37) takes -- specifically says, not withstanding [sic] Rules 404(b) and 405, that this testimony is admissible to prove the state of mind of the child and the relationship between the child and the Defendant, and a limiting instruction is not appropriate. Also, because it's extraneous conduct it's actually part of the same transaction for the jury to understand the relationship between and among the parties, and to understand how this all developed you have to consider all these statutes, 38.37, 38.07(2), and even 38.371, so that's the reason I think it's admissible and why a limiting instruction is not appropriate.
>
> . . . .
>
> The probative value is not substantially outweighed by the danger of unfair prejudice.

The State responded to the trial court's ruling, stating,

> So as to the offenses that occurred against S.O., against R.O., against C.C., the other children in the home, I think there is potential that he's entitled to a limiting instruction on those, because those are extraneous. I believe we gave the proper notice. I believe that the jury can find that those occurred beyond a reasonable doubt and there's no problem with getting into them, but I think on the other victims he may be entitled to an instruction, but it's not that instruction.

The trial court explained again, “[T]hat's the reason I pointed out all of the extraneous conduct is woven together, which I think makes it part of the same transaction, and I don't think it makes sense to the jury without bringing in this extraneous conduct to understand the charged conduct.”

3

Pearson that, on another occasion, when her sister had been crying for a long period of time and refused to stop, Aguillen placed her sister against a heater until her sister "felt like she was burning." Pearson stated, "[E.O.] said there were times when he hits them with metal objects like poles or bats. He pulls them by their hair in the house a lot of times when they wouldn't eat or listen to him." When Pearson asked E.O. if she had spoken to her mother about Aguillen's behavior, E.O. told her that she had and that E.O.'s mother said it was "pretty normal in their culture, and that it would be okay." Pearson was designated as an outcry witness to Aguillen's alleged physical abuse of the other children in the household.

Cynthia Cates, a school counselor at E.O.'s school, testified that, after learning of a series of communications between a student and another teacher, she also spoke with E.O. As a result of the conversation, Cates learned that there had been physical abuse in E.O.'s home. Cates contacted the Texas Department of Family and Protective Service's (DFPS) hotline to make a report.[6]

---

[6]Cates was then asked about the bases for her report, to which Aguillen made a hearsay objection. Aguillen's objection was sustained. Following Cates' testimony, the trial court excused the jury to address the issue of the State's offer of extraneous offenses, stating,

> My basis for letting in the extraneous conduct regarding the assaultive behavior is that without getting into that the jury has no context or understanding of how we got to the sexual assault that the Defendant is indicted for. To me, it's part and parcel of the whole episode, that but for the reports of the physical assaults we wouldn't even know about the alleged sexual assault, so, therefore, to understand all of this the jury almost, necessarily, has to hear how we got to where we are, and without letting in the extraneous conduct as part of the entire episode, it makes no sense, so that's the reason I'm letting it in that way.

The State responded that it believed the extraneous conduct was admissible under 38.37(2). The trial court disagreed, stating, "[U]nder the provisions that allow extraneous conduct, sexual -- I mean, physical assaults are not part of it. Assaultive offenses under Section 1, the relationship is admissible, but I still think it comes in under the same transaction contextual-type thing." The trial court agreed with the State that "to the extent that [E.O.] was a victim of the assaultive behavior comes into the -- her state of mind and the Defendant's state of mind and the previous relationship between the -- the two."

4

Nancy Dominguez, also a school counselor, testified that, on receiving information from a student named Mariah, she decided to speak to S.O., E.O.'s sister. Dominguez stated that, during their conversation, S.O. was "very quiet, sad, scared out of the ordinary" and was having problems making eye contact with her.[7] Despite that, S.O. informed Dominguez that there were several other children living in the home and that, when the children refused to eat, Aguillen would hit them.[8] Dominguez learned that, when one of the sisters, R.O., refused to eat, Aguillen "hit[] her with her shoe." Dominguez continued with a description of Aguillen's actions: "He kicks her to

---

[7]The State then asked Dominguez, "What did she tell you was going on that she had told Mariah?" Aguillen responded,

> We'd object to the testimony as, basically, hearsay under Rule 802. It's a violation of the right to confront witnesses under the Sixth Amendment to the United States Constitution, Article I, Section 10, Texas Constitution, depravation [sic] of right to due course of law and due process under the United States and Texas Constitutions. Further, we feel that this exceeds the scope of 38.72, Texas Code of Criminal Procedure, and also is outside the scope of 38.37, so we would object on the basis of hearsay at this time, Your Honor.

The trial court overruled Aguillen's objection. Not to be deterred, Aguillen continued,

> We would also like to object on the -- that is irrelevant under Texas Rules of Evidence numbers 401, 402, 403, 404(b). It's a violation of due process, a violation of due course of law under the Texas Constitution. The evidence should be excluded because its probative value is outweighed by the danger or -- of unfair prejudice under Rule 403, Texas Rules of Evidence. It's irrelevant and immaterial under Texas Rules of Evidence 802. The probative value outweighs the danger of unfair prejudice under 403. It constitutes character evidence or character traits under Texas Rules of Evidence 404, and, further, it's evidence of other specific acts of wrongdoing under 404(b)(1). It's further hearsay under Rule 802, a violation of the right to confrontation guaranteed by the Sixth Amendment to the United States Constitution, Article I, Section 10, Texas Constitution. We'd object on those grounds, Your Honor.

After a brief conversation between the trial court and the parties, the trial court stated, "I thought I'd already ruled on this." Aguillen responded, "You might have. I'm just trying to do it again for each witness." The trial court informed Aguillen that it would allow him a running objection, to which Aguillen replied that he would be objecting to each individual witness' testimony. Thereafter, the trial court overruled Aguillen's objection.

[8]Again, Aguillen objected to the testimony, to which the trial court responded, "[B]ut what's the point of having a running objection if you're going to object every time we get --."

the point where she actually falls down, and he's thrown her against the wall, and sometimes grabs her by the hair, throws metal pipes at them, and he throws baseballs at them . . . When [R.O.] cries before she goes to bed, [Aguillen] will hit her to get her to stop." Dominguez repeated S.O.'s statement that E.O. wanted to run away from home and that S.O. told her they could run away together. Dominguez did not believe the children were in a safe environment. Based on her conversation with S.O., Dominguez contacted DFPS to make a report.

Brittany Hagan, an investigator with the DFPS, was designated by the State as the outcry witness regarding E.O.'s allegation that she had been sexually abused by Aguillen. Hagan testified that she received a referral intake involving the physical abuse of E.O. On receiving the referral, Hagan went to E.O.'s school. While there, she initially discussed the information she had received with the counselor, the principal, and law enforcement. Not being aware of the alleged sexual abuse, they all confirmed the physical abuse outcries.

Hagan then attempted to speak with E.O. and her sister, S.O. S.O. was hesitant to speak with Hagan, but E.O. agreed to talk to her.[9] Hagan asked the sisters if "anybody ever touched [them] on [their] . . . private body parts?" According to Hagan, E.O. answered affirmatively. E.O. told Hagan that "her dad had touched her between her legs on her front middle part." E.O. did not provide Hagan with any additional information relating to the alleged sexual abuse. E.O. did,

---

[9]The State asked Hagan if E.O. spoke to her about the physical abuse, at which time Aguillen objected, and began to recite his bases for objecting. The trial court noted Aguillen's objection and that he had been granted a running objection, and then stated, "[I]t's overruled, and you're not waiving anything in the record." Despite the trial court's admonishment, Aguillen continued to explain the bases for his objections, including that the State's inquiry sought information amounting to extraneous-offense testimony. The trial court overruled all of Aguillen's objections.

6

however, inform Hagan that she had spoken to her mother about the alleged abuse and that, in response, her mother "cried but . . . didn't address it further than that."[10]

E.O. testified that she did not remember anything about Aguillen moving into the home with her and her mother. When asked what she liked and what she disliked about Aguillen, E.O. responded, "I don't know." E.O. was then asked what would happen to her sister "when she would get into trouble."[11] E.O. testified that she did not remember whether Aguillen disciplined her sister by giving her "spankings" or whether he ever used a belt when disciplining her. She also did not recall how Aguillen treated her sister. Eventually, E.O. stated that Aguillen "kicked [her sister's] butt" when she was around three years old. E.O. also recalled a time when Aguillen became upset with E.O., E.O.'s sister, and a neighborhood friend and threw a "long, plastic tube" at the girls. E.O. stated that she and her sisters would get "whippings" from Aguillen on the "butt" and that she remembered seeing marks on her lower back after Aguillen "whipped" her. According to E.O., the marks were not red marks, but were more like bruises.

---

[10]E.O. also told Hagan that E.O.'s mother had witnessed Aguillen throwing things at the girls and hitting them. E.O. stated that her mother cries, tells Aguillen to stop, but that she does not do anything else to prevent the abuse.

[11]At that point, Aguillen objected and asked for a running objection pursuant to Rules 401, 402, and 403 of the Texas Rules of Evidence. The trial court explained again that Aguillen had already been granted a running objection. Aguillen continued by stating that he "would also request they be excluded under Rule 403." The trial court advised Aguillen that it "overruled it every time," at which point Aguillen stated that he was also "object[ing] to it being irrelevant and immaterial . . . and also a violation . . . of Rules. . . ." After admonishing Aguillen, the trial court overruled his objections. The trial court stated, "[L]isten to me. You have a running objection to all of this. I have ruled on it a million times. You don't have to keep repeating it because the purpose of a running objection is that you don't have to repeat it every time. . . .[S]o stop repeating it every time." Aguillen then explained to the trial court that "the Court of Appeals requires me to do this. Your Honor, so I'm just trying to represent my client." The trial court stated that it disagreed with Aguillen's explanation of the law, and then overruled his objections.

E.O. then recalled Aguillen being at the home computer, calling E.O. into the room, and placing her on his lap. E.O. explained that Aguillen first placed his hands on her thighs and then put them on the part of her body that she used to "pee." She stated that Aguillen placed his hands over, not under, her clothing. According to E.O., Aguillen wanted her to go change her clothing to put on shorter short pants, but E.O. refused. E.O. stated that she believed Aguillen touched her on only one occasion when she was ten years old. She conceded, however, that, during her interview at the Child Advocacy Center (CAC), she told the interviewer that Aguillen touched her once when she was nine years old and then again at the end of 2013.[12]

On cross-examination, E.O. continued to testify that Aguillen had touched her between her legs on only one occasion. She also stated that he had not been tickling her at the time and that he did not say anything to her during the incident. E.O. did not express any opinion as to whether Aguillen's actions were intentional or accidental. She stated that he did not touch her for any length of time and that it happened "pretty quick." According to E.O, during the incident, Aguillen did not remove his clothing or threaten her.

S.O. testified that Aguillen "hit" R.O., another of the siblings in the home, but that he did it as "punishment and stuff, you know, like, a normal parent, I guess." She explained that Aguillen hit R.O. "rather hard" when R.O. was two or three years of age. S.O. stated that, on one occasion, R.O. refused to eat and that Aguillen pushed her or kicked her, which resulted in a bruise to R.O.'s head. According to S.O., she was afraid of Aguillen "[b]ecause he always seemed mean," but she

---

[12]The jury heard a portion of E.O.'s CAC interview wherein she explained that Aguillen had touched her on two occasions.

added that it was not "all the time." S.O. testified that she had also seen "marks" on E.O.'s lower back that resulted from Aguillen hitting E.O. with a belt. S.O. stated that Aguillen also hit her but that he never left marks on her body. S.O. agreed that, when she spoke to the CAC interviewer, she told her that Aguillen had picked her up by the throat when she was around seven years old and then dropped her on the porch, but that she could not recall the incident at trial. S.O. believed she was the first person E.O. spoke to about the alleged sexual abuse by Aguillen. S.O. explained that E.O. told their mother about the alleged incident and that their mother asked Aguillen about the accusation. Aguillen denied ever sexually abusing E.O.

Aguillen presented one witness on his behalf, the mother of the girls, C.A. C.A. testified that E.O. did not speak to her about the allegations before the DFPS became involved in the case. She testified that Aguillen moved out of the residence because she would have been unable to have the children back in the home if he remained there. C.A. testified that, along with some of the children, she visited Aguillen while he was in custody before the commencement of trial. She stated she did not believe E.O.'s allegations against Aguillen. When asked why she did not believe E.O., C.A. stated, "Just little stuff that she does. She -- she lies about stuff that she doesn't have to lie about. Um, she denies stuff that she -- she doesn't have to deny. And it's been like that since she was eight, nine years old and, um, I'm not sure."

According to C.A., E.O. was aware that she did not believe the allegations against Aguillen and that it was E.O.'s fault that he was in jail. As to Aguillen's alleged physical abuse of her daughters, C.A. stated that she had never seen any bruises and that, when she would arrive home from work, "everybody's like, oh, I miss you, Mommy, I love you, and that's why it came from -

9

- to me as just a surprise." C.A. stated that she may have told E.O. that, when Aguillen physically hit her as a manner of "discipline," it was just what happened in their culture. It was C.A.'s opinion that E.O. did not tell the truth.

*Admitting the Extraneous-Offense Evidence Was Harmful Error*

Aguillen's primary focus on appeal is on the admission of testimony from various witnesses relating to his alleged physical abuse of E.O.'s sisters. In admitting the challenged testimony, the trial court stated, among other reasons, that the "basis for letting in the extraneous conduct regarding the assaultive behavior is that[,] without getting into that[,] the jury has no context or understanding of how we got to the sexual assault that the Defendant is indicted for."

Aguillen argues that the trial court's rationale for admitting the challenged evidence was flawed. The State maintains that the extraneous-offense evidence was admissible as evidence of prior bad acts pursuant to Article 38.37 of the Texas Code of Criminal Procedure, as contextual evidence in order to explain the circumstances of E.O.'s outcry, and to rebut Aguillen's defensive theory of fabrication.[13] For these reasons, the State contends, the trial court properly admitted the testimony relating to Aguillen's physical abuse of E.O.'s sisters. We disagree with the State.

---

[13]The State argues first that Aguillen waived this issue on appeal because his objections at trial lacked specificity and the bases of his complaint on appeal do not comport with his objections at trial. We disagree.

Rule 33.1 of the Texas Rules of Appellate Procedure provides, in relevant part, that, in order for a party's complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court. The objection should "state[ ] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). The objecting party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907–09 (Tex. Crim. App. 1992). This allows the trial court and the opposing party the opportunity to correct the asserted error. *Renya v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). Moreover, it

A trial court's ruling on the admissibility of extraneous offenses is reviewed for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990). An appellate court must uphold a trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* An appellate court will not reverse a trial court's ruling to admit evidence unless its ruling falls outside the zone of reasonable disagreement. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

All relevant evidence is admissible unless it is excluded by law. TEX. R. EVID. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." TEX. R. EVID. 401. On the other hand, evidence of a person's bad character is not admissible for the purpose of proving that he or she acted in conformity therewith on any specific occasion. TEX. R. EVID. 404(a). Evidence of other bad acts may be admissible, however, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b)(2); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Extraneous-offense evidence may also be admitted in prosecutions in appropriate

---

is well settled that the legal basis of a complaint raised on appeal must comport with the complaint raised at trial. *Euziere v. State*, 648 S.W.2d 700, 703–04 (Tex. Crim. App. 1983).

The record is replete with Aguillen's objections to the complained-of testimony, and, in some instances, doing so based on the assertion that the testimony amounted to inadmissible extraneous-offense evidence. Although Aguillen's objections to the complained-of testimony were based on a multitude of reasons, his objections to the testimony as extraneous offense evidence and that the evidence was more prejudicial than probative were specific enough for the trial court "to know what he want[ed], why he [thought] he [was] entitled to it, and to understand him at a time when the judge [was] in the proper position to do something about it." *See Lankston*, 827 S.W.2d at 907-09. This is plainly shown by the trial court's rulings on Aguillen's objections and by its stated rationale for its rulings. Aguillen's objections at trial comport with his complaint on appeal and, as such, this issue has not been waived for our review.

circumstances pursuant to Article 38.37 of the Texas Code of Criminal Procedure, addressed below.  In any event, before the trial court admits evidence of an extraneous bad act, the State must show it is relevant to a contested fact of consequence in the case.  *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996).

*Article 38.37.*  First, the State contends, and had convinced the trial court, that evidence of Aguillen's physical abuse of E.O.'s sisters was admissible pursuant to Article 38.37 of the Texas Code of Criminal Procedure.  Article 38.37 contains a rule of evidence applicable to certain types of sexual assault cases, including this one.

> (b)    Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant *against the child who is the victim of the alleged offense* shall be admitted for its bearing on relevant matters, including:
>
> (1)    the state of mind of the defendant and the child; and
>
> (2)    the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b)(1), (2) (West Supp. 2016) (emphasis added).

Before a trial court can admit such evidence, it must first, "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt,"[14] and then "conduct a hearing out of the presence

---

[14]Initially, the trial court informed the parties that it would not include a "reasonable doubt" instruction in the jury charge.  A review of the record, however, reflects that it did, in fact, include the instruction, stating,

> You cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or acts against the child, if any, and even then you may only consider the same in determining its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child, and for no other reason.

12

of the jury for that purpose." In this case, the trial court held the appropriate hearing before the commencement of trial and determined that the complained-of extraneous-offense evidence would be admitted.[15]

Aguillen contends that Article 38.37 of the Texas Code of Criminal Procedure does not address a defendant's nonsexual acts committed against persons other than the complaining witness. Article 38.37, Section 1, carves out an exception to Rule 404(b), but it does so in relation to a defendant's extraneous bad acts against the victim in the case, not against others. The State maintains, however, that at least two courts have allowed such evidence, citing to *Jones v. State*, 119 S.W.3d 412, 420–21 (Tex. App.—Fort Worth 2003, no pet.),[16] and *Joseph v. State*, No. 01-

---

[15]In addition, "The state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 no later than the 30th day before the defendant's trial." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (West Supp. 2016). In this case, the State provided Aguillen with timely notice of its intent to use extraneous-offense evidence.

[16]In *Jones*, the defendant was charged with the offense of indecency with a child based on the allegation that he touched her in her vaginal area. *Jones*, 119 S.W.3d at 416–17. During its case-in-chief, the State introduced evidence that the defendant had (1) previously paid money to the victim and other underage girls to remove part or all of their swimsuits, (2) provided alcohol to the victim and the other underage girls, (3) offered underage girls money to run naked on the beach, and (4) attempted to untie the swimsuits of the victim and the underage girls. *Id.* at 417. Jones conceded that the evidence showing he tried to untie and/or take off the victim's swimsuit at the lake, that he furnished alcohol to her, and that he offered her money to take off her swimsuit, was relevant. *Id.* at 420. He argued, however, that the evidence regarding the other underage girls had little, if any, relevance as to whether he committed the charged offense against the victim. *Id.* The State argued that the evidence was admissible under Article 38.37 because it had a bearing on relevant matters, including that it was necessary in order to show Jones' and the victim's states of mind and to explain their prior relationship. *Id.* The appellate court agreed with the State, reasoning,

> Here, it would have been extremely difficult for the girls who testified to separate [the defendant's] actions toward [the victim] from his actions toward them because his actions and words were directed at all the girls simultaneously. Even if the girls could have somehow distinguished [the defendant's] conduct toward the group from [the defendant's] conduct specifically toward [the victim], this distinction would have given the jury an inaccurate picture of [the defendant's] relationship with [the victim]. *Accord Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (indicating jury is entitled to know all relevant surrounding facts and circumstances of charged offense). [The defendant's] prior relationship with [the victim] was developed through group activities that included [the other girls]. Their testimony was relevant to give an accurate picture of [the defendant's] prior relationship with [the victim].

13

02-01109-CR, 2004 WL 637924 (Tex. App.—Houston [1st Dist.] Apr. 1, 2004, pet. ref'd) (mem. op., not designated for publication).[17]  Notably, the holdings in *Jones* and *Joseph* were decided before the Legislature's amendment to Rule 38.37.  In 2013, Sections 2 and 2-a were added to Article 38.37 to allow "evidence of other sexual-related offenses allegedly committed by the defendant against a child to be admitted in the trial of certain sexual-related offenses for any bearing the evidence has on relevant matters." *Bradshaw v. State*, 466 S.W.3d 875 (Tex. App.— Texarkana 2015, pet. ref'd) (quoting House Comm. on Criminal Procedure Reform, Select, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)).  Section 2(b) states,

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense *described by Subsection (a)(1) or (2)* may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE OF CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2016) (emphasis added).  The amendment thus allowed for, under appropriate circumstances, evidence of extraneous offenses

---

[17]In *Joseph*, Joseph was tried for the offense of aggravated sexual assault of a child. *Joseph*, 2004 WL 637924, at *1. Joseph objected to the admission of extraneous-offense evidence relating to the allegation that he had physically assaulted the child complainant. *Id*. at *6. There, the defendant argued that the introduction of the extraneous-offense evidence would be akin to placing him on trial for another offense. *Id*. The appellate court concluded that neither of Joseph's objections "invoked Rule 403 nor complained of any other prejudicial value." *Id*. It reasoned that, once the trial court determined that the evidence was admissible under Article 38.37, "it was incumbent upon [the defendant] to ask the trial court to exclude the evidence by its authority under Rule 403, on the ground that the probative value of the evidence . . . is nevertheless substantially outweighed by the danger of unfair prejudice." *Id*. Because Joseph did not object under Rule 403, he failed to preserve the issue on appeal. *Id*. Thus, the appellate court never ruled upon the substantive issue of the admission of the extraneous offense evidence.

Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

alleged to have been committed by the accused against individuals other than the victim. However, subsections (a)(1) and (2) specifically delineated the types of extraneous offenses that might be admissible: sex trafficking of a child; continuous sexual abuse of a young child or children; indecency with a child; sexual assault of a child; aggravated sexual assault of a child; online solicitation of a minor; sexual performance by a child; possession or promotion of child pornography; and any attempt or conspiracy to commit any of these offenses. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(A)–(H), (2) (West Supp. 2016).

Whether we analyze the facts of this case in the pre-amendment context using cases such as *Jones* or we do so in light of the 2013 amendment to Article 38.37, the result is the same. Under either scenario, an extraneous offense committed by an accused against a third party must have some similarity to the charged offense; that is, it must at least involve sexual misconduct of some sort. Here, the State sought to introduce evidence that Aguillen physically abused E.O.'s sisters, which abuse had no connection to the charged offense. There is no evidence that the physical abuse against the sisters happened at or near the time of the alleged sexual abuse of E.O. or that the extraneous offenses against E.O.'s sisters somehow led to or explained the charged offenses. In other words, evidence of Aguillen's physical abuse of E.O.'s sisters has no relevant bearing on whether Aguillen inappropriately touched E.O. on the two occasions he was alleged to have done so. Contrary to the State's contention, the extraneous-offense evidence involving E.O.'s sisters was not admissible pursuant to Article 38.37 of the Texas Code of Criminal Procedure.

*Contextual Evidence.* The State also contends that the complained-of evidence was admissible as contextual evidence. In addition to the explicit exceptions set out in Rule 404(b),

15

extraneous-offense evidence may be admissible as contextual evidence. There are two types of contextual evidence: (1) "same transactional evidence," which refers to other offenses connected with the primary offense, and (2) "background contextual evidence," which includes all general background evidence. *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991). Same-transaction evidence is admissible as an exception to Rule 404(b) when the evidence is essential for the State to rationally present evidence of the charged offense. *Id.* at 86 n.4. "Only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence, should the same transactional evidence be admitted." *Rogers v. State*, 853 S.W.2d 29, 32 (Tex. Crim. App. 1993) (op. on reh'g). Thus, extraneous-offense evidence may, when appropriate, be admissible as same-transaction contextual evidence. *Lockhart v. State*, 847 S.W.2d 568, 570 (Tex. Crim. App. 1992). On the other hand, background contextual evidence "fill[s] in the background of the narrative and give[s] it interest, color, and lifelikeness." *Mayes*, 816 S.W.2d at 87. Background contextual evidence is not admissible for one of the "other purposes" for which evidence may be admitted under Rule 404(b) if it includes an impermissible character component. *Id.* at 88.

The State contends that the extraneous-offense evidence was necessary to show the circumstances surrounding E.O.'s outcry and, as such, was properly admitted as contextual evidence. We disagree. The charged offenses of indecency with a child by contact, as well as the facts and circumstances on which the charges were based, could be understood by the jury without the introduction of the complained-of extraneous-offense evidence relating to the physical abuse of E.O.'s sisters. In fact, it was E.O.'s conversation with Cates, the school counselor, that resulted

16

in the involvement of the DFPS, which then led directly to E.O.'s outcry regarding the sexual abuse by Aguillen. The evidence regarding Aguillen's physical abuse of E.O.'s sisters was superfluous, if the rationale for its admissibility was to show the circumstances of E.O.'s outcry or what led up to her outcry. Simply stated, the relevant events could have been explained adequately without the use of the extraneous-offense evidence at issue.

In addition, the State contends that "a strict prohibition of testimony regarding inter-family violence would ignore the reality of family dynamics."[18] The State asserts that the "assault of one child in the presence of others carries with it an implied threat – If you don't do what I demand of you, you're next." Assuming that it is the State's rationale that the extraneous-offense evidence against E.O.'s sisters was necessary to show the jury that the charged offense did not happen in a vacuum, that Aguillen's household was an otherwise "unhealthy" one, or that Aguillen controlled E.O., the evidence of Aguillen's physical abuse against E.O., alone, would have adequately served that purpose. To include the extraneous-offense evidence involving E.O.'s sisters shows merely that it was a part of Aguillen's bad character to physically assault the other children living in the home; but it has little, if any, relevance to the matter of whether Aguillen committed the offense of indecency with a child by contact against E.O. on the two occasions he was alleged to have

---

[18]William Carter, a licensed psychologist, explained the dynamics of a dysfunctional family and that Aguillen's display of physical abuse against E.O. and her sisters was an attempt to maintain control over the family members, stating, "If I am a controlling person, if I have in mind wanting to do something bad to a child, I will do things to give shape to the relationship by being dictatorial -- dictatorial or abusive or physically -- physically, you know, challenging, whatever, and I'm still shaping the relationship, even if it's by another means." Carter stated that it had been difficult for E.O. and other victims like her to talk about the charged offenses "especially if that person [Aguillen] dominates the household and has authority over her, it is much more difficult." Although Carter's testimony was relevant, the jury just as easily could have considered it for the purpose for which it was offered had he applied it only to Aguillen's physical assaults of E.O.

17

done so. This is the precise purpose of Rule 404(b)'s prohibition against the use of character evidence.[19]

*Rebutting a Defensive Theory.* The State argues further that the extraneous-offense evidence was necessary to rebut Aguillen's defensive theory that E.O. lacked credibility and that she had fabricated the charges against him. Specifically, the State reasons that, because the children's mother, C.A., testified that E.O. had been dishonest about the charged offenses, the consistent testimony from E.O. and S.O. regarding Aguillen's physical abuse of the children would show that E.O. was being truthful about the charged offenses. We disagree again.

In support of its argument, the State references *Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008). Bass was a pastor who had been accused of sexually assaulting a teenager on church property. *Id.* at 563. In Bass' opening statement to the jury, he claimed that the teenager's allegations were "pure fantasy" and "pure fabrication." *Id*. at 557. Bass also asserted that he was the "real deal" and a "genuine article" who would never engage in that sort of behavior. *Id*. at 558. After the victim testified, the trial court permitted the State to present extraneous-offense evidence

---

[19]The State also contends that testimony regarding Aguillen's physical abuse of E.O.'s sisters was admissible in order to explain the relationship between Aguillen and E.O. The State cites *Johns v. State*, 236 S.W.2d 820 (Tex. Crim. App. 1951), wherein the Texas Court of Criminal Appeals held,

> In matters of incest or rape under the age of consent, it is often of importance to show the attitude between them and the relative size, age and strength of the parties, and if possible, to show how one in position demanding care and guidance of a related person, has failed in such duty and has adopted an unnatural attitude relative thereto, and by fondling or otherwise, evidences a desire for sexual gratification toward such child or relative. We therefore think that where any acts become material to thus show them[,] they are admissible.

*Id*. at 823. In this case, the "relative size, age, and strength of the parties," as well as, the domineering presence Aguillen maintained over E.O., could have been clearly demonstrated through evidence that Aguillen physically abused E.O. The testimony that he also physically abused E.O.'s sisters adds little probative value for the jury's consideration; instead, it adds a substantial amount of prejudice.

18

during its case-in-chief to show that Bass had sexually assaulted two other young girls who attended Bass' church. *Id.* at 558–59. As his defense, Bass presented evidence in the form of opinion and reputation testimony that the victim was not considered to be a truthful person. *Id.* at 559. Bass also testified, denying that he committed the charged offenses and the two extraneous offenses. *Id.* In addition, Bass presented evidence of his good character and reputation for being a truthful person. *Id.* at 560. Moreover, in his closing jury argument, Bass commented on the victim's credibility by referring to her claim against him as a "bizarre, silly accusation." *Id.* He continued by commenting on the complainant's failure to present more than one character witness and stating that, if any other individuals testified on her behalf, the State "can line them up, bring them up, let you hear." *Id.* In further support of Bass' defense, the jury heard that "[Bass] spends his life from 12:00 to 1:00 every day doing what? He's in prayer." *Id.* at 560–61. "He doesn't have time to be out stalking girls. You saw his two sons. Do those look like two boys raised by a pedophile?" *Id.* at 561.

In affirming the trial court's decision to admit the extraneous-offense evidence, the Texas Court of Criminal Appeals stated,

> In this case, it is at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory that the complainant fabricated her allegations against him and of rebutting the defensive theory clearly suggesting that appellant, as a "real deal" and "genuine" pastor, would not engage in the type of conduct alleged in the indictment.

*Id.* at 563.[20]

---

[20]The court also pointed to its similar holding in *Powell v. State*, 63 S.W.3d 435, 438–40 (Tex. Crim. App. 2001) (in prosecution for indecency with a child, defendant's opening statement that he lacked opportunity to molest the victim

19

Although the Texas Court of Criminal Appeals has held that extraneous-offense evidence is admissible to rebut a defensive theory raised in opening statement or raised by the State's witnesses during cross-examination, the fact that the State's witnesses are cross-examined does not, in and of itself, authorize the introduction of extraneous-offense evidence. *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994) (finding trial court did not err in admitting evidence to rebut defensive theory raised on cross-examination of State's witnesses); *Caldwell v. State*, 477 S.W.2d 877, 879 (Tex. Crim. App. 1972). Likewise, a challenge to the complainant's credibility on cross-examination does not automatically open the door to extraneous-offense evidence. *Id*. Instead, the response elicited from the State's witnesses on cross-examination must be sufficient to construct a defensive theory before the State may introduce extraneous-offense evidence in rebuttal. *Walker v. State*, 588 S.W.2d 920, 922–23 (Tex. Crim. App. 1979).

In this case, Aguillen's opening statement amounted to nearly one page of the transcript of a multi-volume trial record and included the following paragraph:

> You've already given -- been given an indication of what the children, perhaps, think of this man. They probably don't like him. There's going to be evidence to that effect. I believe, and so there's going to be some evidence as to why these children would be making up allegations of Indecency with a Child.

Aguillen continued by asking the jury to consider him "innocent at this point." During trial, Aguillen chose not to testify and presented only one witness on his behalf, the mother of the girls.

---

pursuant to the circumstances of the charged offense opened door to the admission of extraneous-offense evidence that defendant molested others under almost identical circumstances to rebut defensive theory of lack of opportunity); *see also Daggett v. State*, 187 S.W.3d 444, 453–54 (Tex. Crim. App. 2005) (in prosecution for sexual assault of child under seventeen years of age, defendant's overriding direct-examination testimony disavowing any sexual misconduct with minors opened door to admission of extraneous-offense evidence of defendant's sexual misconduct with another minor to rebut his testimony).

There are several differences between the facts contained in *Bass* and the facts of this case. First, Bass staked out his own righteous character and explicitly asserted that he would never sexually abuse a child who attended his church because he was not that type of man. In addition, Bass testified as to his own credibility by claiming he was the "real deal," and therefore, the victim was merely orchestrating "pure fantasy." As a result, the State was allowed to show that Bass had, in fact, acted in a very similar manner towards other victims who were comparably situated as the victim in the charged case. Moreover, Bass' testimony at trial was consistent with the assertions he had made in his opening statement.

In this case, Aguillen's brief opening statement consisted of a simple assertion that the children in the household "probably [didn't] like [Aguillen]" and that he believed the evidence would show why they would "make up" the allegations against him. Moreover, Aguillen chose not to testify and presented only one witness, E.O.'s mother, who testified that she believed E.O. was being untruthful about the charged offenses. Aguillen did not claim a generally righteous character nor advance a fabrication theory as forcefully as Bass did; nonetheless, he relied on a defensive theory that E.O. had not been telling the truth when she accused Aguillen of the charged offenses. As we stated above, the fact that E.O.'s testimony appeared consistent with S.O.'s testimony regarding the physical abuse of the sisters does not rebut Aguillen's defense that E.O. was being dishonest about the charged-offenses. It shows only that the girls were most likely telling the truth about Aguillen physically assaulting them.

*Rule of Evidence 403.* Even assuming evidence regarding the physical assaults of E.O.'s sisters was admissible either to rebut a defensive theory or to provide the jury with contextual

21

evidence, a trial court should nonetheless exclude such evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.[21] *See* TEX. R. EVID. 403;[22] *Moses*, 105 S.W.3d at 626; *Montgomery*, 810 S.W.2d at 387. Under a Rule 403 analysis, courts should balance the following factors: (1) the strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous offense evidence to impress the jury in some irrational but ineffaceable manner; (3) the amount of time the proponent needed to develop the evidence; and (4) the strength of the proponents need for this evidence to prove a fact of consequence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

Here, the State charged Aguillen with two counts of indecency with a child. A person commits the offense of indecency with a child "if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person: (1) engages in sexual contact with the child . . . ." TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). "'[S]exual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing . . . [or] any part of the genitals of a child. . ." TEX. PENAL CODE ANN. § 21.11(c)(1) (West 2011).

These are the elements the State was required to prove to convict Aguillen of the charged offenses. That said, evidence that Aguillen physically assaulted E.O.'s sisters is of little, if any, relevance in proving that Aguillen inappropriately touched E.O. in a sexual manner on two

---

[21]At trial, Aguillen repeatedly objected to the extraneous-offense evidence relating to the physical abuse of E.O.'s sisters pursuant to Rule 403 of the Texas Rules of Evidence, and he continues to make this assertion on appeal.

[22] "The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

separate occasions. The complained-of extraneous-offense evidence does not make any element of the charged offense more or less probable. In addition, evidence that Aguillen kicked his young daughters, threw things at them, placed them against heaters, hit them until they were bruised, choked them, and physically abused them for merely refusing to eat likely left a lasting impression with the jurors and unfairly prejudiced them. Moreover, the State spent a disproportionate amount of time presenting the jurors with evidence of Aguillen's physical abuse of E.O.'s sisters as compared to the amount of time it spent presenting evidence relating to the charged offenses, thereby confusing the real issue in the case; that is, whether Aguillen was guilty of committing the offense of indecency with a child. It has long been held that "an accused is entitled to be tried on the accusation made in the state's pleading and that he should not be tried for some collateral crime or for being a criminal generally." *Albrecht v. State*, 486 S.W.2d 97 (Tex. Crim. App. 1972). Here, the extraneous-ffense evidence of Aguillen's physical assaults of E.O.'s sisters was substantially more prejudicial than probative and, thus, harmful when erroneously admitted.[23]

---

[23]Because we find reversible error in the admission of the extraneous-offense evidence, we find it unnecessary to address Aguillen's remaining issue.

We reverse the trial court's judgment and remand this case to the trial court for a new trial.


Josh R. Morriss, III
Chief Justice

Date Submitted:     August 10, 2017
Date Decided:       October 31, 2017

Publish