

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-19-00292-CR

**DAMION DAMONE JONES,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 17-02649-CRF-272

---

## MEMORANDUM  OPINION

---

The jury convicted Damion Jones of the offense of aggravated robbery.  *See* TEX.

PENAL CODE ANN. § 29.03 (West).  The trial court found the enhancement paragraphs to

be true and assessed punishment at 45 years in prison.  We affirm.

### SUFFICIENCY OF THE EVIDENCE

In the first issue, Jones argues that the evidence is insufficient to support his

conviction for aggravated robbery.  The Court of Criminal Appeals has expressed our

standard of review of a sufficiency issue as follows:

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the

offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Marlon Dockery lived in The Retreat apartment complex with four roommates. Essex Johnson was one of Dockery's roommates, and Johnson's friend, Sonie Baldwin, was also staying at the apartment. Johnson and Baldwin sold marijuana, and there was testimony they sold drugs for an individual named Burnis Williams. Dockery testified that in the early morning hours of April 2, 2017, he was on his couch making plans to meet a girl. Dockery looked up from his phone, and there was a gun pointed in his face. Dockery then saw two other individuals enter the apartment with guns. Dockery testified that he recognized one of the intruders who entered the apartment as an individual who had purchased marijuana from Baldwin earlier that night. Dockery stated that the intruder with a gun in Dockery's face was a black male wearing short pants that came to his calves and blue Jordan shoes.

The intruders restrained Dockery, Johnson, and Baldwin, with zip ties. They took Baldwin's phone, a gold phone with a fuzzy case, and asked her for the passcode. When she would not give the passcode, they hit her in the head with a pistol causing her to bleed. Baldwin eventually gave them the passcode to her phone. The men also hit Johnson in the head with a pistol. Dockery testified that alarms started going off on the intruders' phones, and they then started grabbing things from the apartment. Dockery said that they took electronics, a television, a laptop, Playstation and Xbox game consoles,

and Johnson's high school diploma.  The intruders then left the apartment.  Dockery broke free from his restraints and ran for help.

Officer Brad Carpenter, with the College Station Police Department, testified that he responded to an unknown incident at The Retreat.  When he arrived, he was approached by a black male, Dockery, who said he had been robbed.  Dockery told Officer Carpenter there were two other people tied up in his apartment.  Officer Carpenter went to the apartment and found Johnson and Baldwin bound with zip ties and bleeding from their wrists.  The apartment was in disarray.  Officer Steven Taylor also responded to the call.  Officer Taylor testified that Baldwin was bleeding from her head and was very scared.  Officer Taylor was able to use a locator program to obtain a location for Baldwin's phone that was taken by the intruders during the robbery.

Several officers went to the address where the locator program showed the phone was located.  Officer Taylor Lovelace testified that near the location, he observed a white Cadillac with the motor running.  Officer Lovelace then saw a male run from The Rail apartment complex toward the passenger side of the white Cadillac.  Officer Lovelace instructed the person to stop and show his hands.  As he approached the vehicle, Officer Lovelace heard the sound of something metal hitting the ground, and he heard metal sliding on the pavement.  Officer Lovelace then observed a silver revolver underneath the vehicle coming from the passenger side.  The man, who was later identified as Jones, began to walk away and did not comply with commands to stop.  The officers then physically forced him to the ground.

Officer Lovelace testified that there were plastic baggies containing marijuana in the Cadillac and that there was also a semi-automatic pistol in the backseat of the vehicle. The officers also recovered other items in the Cadillac that were reported as having been taken by the intruders from Dockery's apartment including electronics, a PlayStation game console, and a television. Essex Johnson's high school diploma was also found in the Cadillac. There was also a backpack containing zip ties found in the Cadillac.

Officer Chris Herring conducted a search of Jones and found a phone matching the description of the phone taken from Baldwin. Officer Taylor was able to unlock the phone using the passcode Baldwin gave him. Officer Herring also found a small amount of marijuana on Jones's person during the search. Jones was wearing short jean pants and Jordan shoes at the time he was detained, but the shoes were not blue.

Officer Lovelace had observed Jones running from an apartment building. He testified that at that apartment building he noticed an apartment with the window screen pried out. Looking through the window opening, Officer Lovelace could see that the bedroom was ransacked. He made contact with the person who lived in the apartment, Shelby Keng, who was returning to the apartment from being out for the night. Keng was not able to use her key to open the front door because it was damaged from an attempted forced entry. Keng testified that she lived with Burnis Williams, and that he sold drugs.

Keng stated that Johnson and Baldwin sold drugs for Burnis Williams and that on the night of the offense Williams had been at The Retreat apartment complex with them.

Keng felt certain the intruders at her apartment obtained her address from Baldwin. Keng further testified that window locks from her apartment window were missing. When he was detained, Jones was found in possession of window locks matching those missing from Keng's apartment window.

The State was required to prove that while in the course of committing theft of property and with intent to obtain or maintain control of the property, Jones intentionally and knowingly threatened or placed Dockery in fear of imminent bodily injury or death. The State was further required to prove that Jones used or exhibited a deadly weapon, a firearm. Jones specifically argues that the evidence is insufficient to support the jury's finding that he was the individual who entered Dockery's apartment, put a gun in Dockery's face, and threatened him with imminent bodily injury. Jones contends that Dockery's testimony was insufficient to identify him as the person who committed the offense.

Identity may be proven by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence. *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018). Dockery positively identified Jones in court as being one of the three intruders who entered his apartment and robbed him at gun point. Dockery testified that Jones was the person who purchased marijuana from Baldwin and then later entered the apartment with a firearm. Dockery stated that the person who pointed the gun at him was a black man, wearing short jean pants, Jordan shoes, and his hair was in corn rows. Jones matched that description on the night of the offense. We note that there was some

discrepancy in the color of the shoes Jones was wearing; however, the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Dockery's testimony identifying Jones as the person who robbed him is sufficient to support the conviction. Additionally, Jones was found in possession of recently stolen property from which the jury could make reasonable inferences. We overrule the first issue.

## EXTRANEOUS EVIDENCE

In the second issue, Jones argues that the trial court erred in admitting extraneous evidence. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id*. at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Jones contends that the trial court erred in admitting evidence of the alleged burglary of a habitation of Burnis Williams and Shelby Keng's apartment. Jones argues that the evidence is not admissible as contextual evidence or for any limited purpose under Rule 404 (b) of the Texas Rules of Evidence.

In addition to the explicit exceptions set out in Rule 404(b), extraneous-offense evidence may be admissible as contextual evidence. There are two types of contextual

evidence: (1) "same transaction" evidence, which refers to other offenses connected with the primary offense, and (2) "background" contextual evidence, which includes all general background evidence. *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991); *Aguillen v. State*, 534 S.W.3d 701, 712 (Tex. App.—Texarkana 2017, no pet.). Same-transaction contextual evidence is admissible as an exception to Rule 404(b) when the evidence is essential for the State to rationally present evidence of the charged offense. *Mayes v. State*, 816 S.W.2d at 86 n.4. "Only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence, should the same transactional evidence be admitted." *Rogers v. State*, 853 S.W.2d 29, 32 (Tex. Crim. App. 1993) (op. on reh'g). Background contextual evidence "fill [s] in the background of the narrative and give[s] it interest, color, and lifelikeness." *Mayes v. State*, 816 S.W.2d at 87; *Aguillen v. State*, 534 S.W.3d at 712.

Jones contends that evidence connecting him to the extraneous act at Keng's apartment was not essential to understanding the context and circumstances of the event. The record shows that Johnson and Baldwin sold drugs for Burnis Williams. Jones and two others robbed the apartment where Johnson and Baldwin lived and were looking for drugs during that robbery. They did not find drugs at that apartment. They took Baldwin's phone and the officers tracked the phone to the apartment building of Johnson and Baldwin's drug supplier, Williams. Jones was detained at that location and was in possession of Baldwin's phone. The evidence of the break-in at Keng's apartment was interwoven with the robbery at the Dockery's apartment. We do not find that the trial

court abused its discretion in admitting the evidence of the attempted burglary at Williams's apartment. We overrule the second issue.

## PRIOR CONVICTION

In the third issue, Jones argues that the trial court abused its discretion when it allowed the state to impeach him with a prior conviction. Jones contends that his 2007 conviction for aggravated robbery was inadmissible under Rule 609 of the Texas Rules of Evidence and *Theus v. State*, 845 S.W.2d 874 (Tex. Crim. App. 1992). Rule 609 of the Texas Rules of Evidence provides that:

(a) Evidence of a criminal conviction offered to attack a witness's character for truthfulness must be admitted if:
 (1) the crime was a felony or involved moral turpitude, regardless of punishment;
 (2) the probative value of the evidence outweighs its prejudicial effect to a party; and
 (3) it is elicited from the witness or established by public record.

TEX. R. EVID. 609 (a). In *Theus*, the Court set out a non-exclusive list of factors the trial court should consider in weighing the probative value of a prior conviction against its prejudicial effect. Those include: (1) the impeachment value of the prior crime, (2) the temporal proximity of the prior crime relative to the charged offense and the witness' subsequent history, (3) the similarity between the prior crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Theus v. State*, 845 S.W.2d at 880.

Jones contends that the trial court did not consider the *Theus* factors. Application of the balancing test need not be overt; that is, the trial court need not expressly inform

the parties that it undertook the balancing test, describe the factors it weighed, and issue a finding disclosing whether those circumstances favored either the inclusion or exclusion of the evidence. *Chitwood v. State*, 350 S.W.3d 746, 749 (Tex. App. — Amarillo 2011, no pet.) *Bryant v. State*, 997 S.W.2d 673, 676 (Tex. App. —Texarkana 1999, no pet.). Instead, we are to presume that the test was performed. *Chitwood v. State*, 350 S.W.3d at 749.

The impeachment value of crimes that involve deception is higher than crimes that involve violence. *Theus v. State*, 845 S.W.2d at 881. Because the prior conviction was for aggravated robbery, the impeachment value is not high under the *Theus* factors. Jones was convicted on June 21, 2007 for the offense of aggravated robbery and sentenced to eight years confinement. He was indicted for the current offense on April 2, 2017. The prior conviction is not too remote under Rule 609 (b). The 2007 conviction was for aggravated robbery, and Jones was being tried for aggravated robbery. Because Jones's prior conviction is similar to his present offense, the similarity factor weighs against the admission of the evidence. However, the jury was charged to consider the previous conviction only to determine the weight to be given to Jones's testimony, not as evidence of guilt. We must presume the jury followed these instructions. *White v. State*, 21 S.W.3d 642, 647 (Tex. App.—Waco 2002, pet. ref'd).

The last two factors, importance of the defendant's testimony and his credibility, are related. When the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's credibility escalates. *Theus v. State*, 845

S.W.2d at 881. As the importance of the defendant's credibility escalates, so does the need to allow the State an opportunity to impeach his credibility. *Id*. Jones was the only witness called by the defense at trial, and his testimony contradicted that of Dockery. Therefore, Jones's credibility was a central issue, and the State's need to be able to impeach his credibility was high. We find that the trial court did not abuse its discretion in allowing the introduction into evidence of Jones's 2007 conviction for aggravated robbery. We overrule the third issue.

## CONCLUSION

We affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Wright[1]
Affirmed
Opinion delivered and filed August 4, 2021
Do not publish
[CRPM]



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.