**Opinion filed October 13, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00087-CR
_____

## SHAWN RAY WISHERT, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR26987**

### O P I N I O N

Appellant, Shawn Ray Wishert, was indicted for the offense of continuous sexual abuse of a young child. TEX. PENAL CODE ANN. § 21.02 (West Supp. 2021). The jury convicted Appellant of the charged offense. Appellant then pleaded "true" to a prior felony conviction for enhancement purposes, and the jury subsequently assessed his punishment at life imprisonment in the Institutional Division of Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly.

In two issues, Appellant challenges his conviction and contends that (1) the State failed to present sufficient evidence that multiple instances of sexual abuse occurred over a duration of thirty days or longer, and (2) the trial court abused its discretion when it failed to conduct a nondiscretionary Rule 403 balancing analysis to determine whether evidence deemed admissible under Article 38.37, Section 2(b) of the Texas Code of Criminal Procedure was nevertheless subject to exclusion under Rule 403 of the Texas Rules of Evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 2(a)(1)(B), (b), 2-a (West Supp. 2021); *see also* TEX. R. EVID. 403. We affirm.

## I. *Factual Background*

The State presented several witnesses during its case in chief. Two of those witnesses testified regarding extraneous offenses or bad acts committed by Appellant. As such, their testimony was subject to the requirements of Article 38.37, Sections 2(a)(1)(B), (b), and 2-a.

### A. *Testimony Regarding the Duration of the Sexual Abuse*

The victim of the indicted offense, R.W., was born in 2003; she was seventeen when she testified at trial. R.W. testified that she recalled attending elementary school near the house where her father (Appellant) lived when she was in fifth grade; she was around thirteen or younger at the time. When she visited Appellant, sometimes she would spend the night.

R.W.'s best friend lived next door to Appellant, so she would go over to see her friend and stay the night at Appellant's house, although sometimes she also slept at her friend's house. She stated that she preferred to stay at her friend's house in order to avoid Appellant's molestation. When she slept at Appellant's house, R.W. would sleep in the living room on a leather couch. During those times, Appellant began touching her inappropriately. Sometimes, R.W. recalled, she was asleep when the touching began, and other times she was awake but pretended to be asleep

2

because she was afraid of Appellant. She testified that Appellant would begin by touching her shoulders and breasts and then proceed to touching her vagina and inserting his fingers into her vagina. R.W. described that Appellant's abuse was painful and caused her to bleed vaginally. When the sexual abuse occurred, Ann Wilder (Appellant's girlfriend) and her two sons also lived at the house. No one witnessed the sexual abuse because they were all asleep when it happened.

R.W. testified that the sexual abuse occurred regularly throughout the summer of 2017—almost every time she spent the night alone at Appellant's house. Although she struggled to remember exact dates, R.W. testified that she recalled these incidents of sexual abuse had occurred both during the summer months and during the school year. R.W. attested that she did not consider Appellant to be her father.

In 2018, R.W. told her mother that Appellant had repeatedly sexually abused her. According to R.W., her mother arranged counseling services for her, which eventually resulted in the sexual abuse being reported to law enforcement and other authorities.

R.W. also recalled an incident in which Appellant suffered a burn injury while at work in January of 2017; she remembered that he was transported by helicopter to a hospital in Dallas and that she went to the hospital with her mother to check on him. She testified that this incident occurred before Appellant began sexually abusing her.

Several other witnesses, including Appellant, corroborated R.W.'s timeline of events. Wilder testified that R.W. would come over to their house on the weekends and would sleep on the leather couch in the living room at night. Sometimes R.W. would sleep over at her friend's house next door. Wilder confirmed that when R.W. came over, she would stay for extended periods of time, sometimes for weeks or a month at a time, and would often spend the night at their house. She testified that

R.W. would stay for weekends or for the summer, or even sometimes during the school year. Wilder also testified that there were times when R.W. stayed at their house but she, Wilder, was not present because she was at work. Wilder could not recall how old R.W. was at this time. According to Wilder, she did not notice any animosity between R.W. and Appellant; to her, they seemed to get along.

Sometime after the sexual abuse had occurred, and after Wilder was no longer dating Appellant, R.W. reached out to Wilder via Facebook Messenger; the two spoke on the phone, and R.W. divulged that Appellant had sexually abused her. Wilder stated that she believed R.W.'s allegations, even though when she dated Appellant she had never been concerned about his presence around children.

Appellant testified that R.W. would come over to his house on weekends in 2017 to visit her friend, who lived next door. He testified that R.W. sometimes spent the night at the friend's house, but also at times would spend the night at his house. He confirmed that when R.W. slept at his house, she would sleep on the leather couch in the living room. He denied ever sexually abusing R.W.

B. *Article 38.37 Testimony*

After conducting an Article 38.37, Section 2-a hearing outside the jury's presence to determine the admissibility of the proffered testimony of Appellant's adult children regarding prior acts of sexual abuse committed by Appellant against them when they were children, the trial court concluded that their testimony was admissible. The trial court declined to conduct a Rule 403 balancing analysis regarding the admissibility of this testimony because it did not believe that Article 38.37, Section 2(b) required it. However, before this testimony was presented to the jury, the trial court admonished and instructed the jury that they could only consider the extraneous offense evidence if they believed that those extraneous events occurred beyond a reasonable doubt.

4

### 1. *C.W. – Appellant's Adult Son*

At the time he testified, C.W. was thirty years old. Like R.W., Appellant is C.W.'s father. C.W. testified that he remembered that he was around the age of four or five when Appellant first sexually abused him; at the time, C.W. shared a bedroom with his sister. He recalled that around age six, he saw his mother and Appellant having intercourse in the living room; he was supposed to be asleep at the time. In another incident at around the same age, C.W. saw Appellant watching pornography in Appellant's bedroom, and Appellant touched C.W.'s penis while they watched it. He also remembered times when he and his sister were taking a bath together and Appellant would tell them to kiss or touch each other inappropriately.

C.W. testified that he remembered a specific instance when he was six years old—he and his sister were "playing slip and slide"—that Appellant directed C.W.'s sister to perform oral sex on C.W., and she obeyed. Similar incidences occurred at other times, according to C.W. Around his twelfth birthday, the police came and removed him and his sister from Appellant's house. According to C.W., he never outcried because he was embarrassed to speak about the sexual abuse.

During cross-examination, C.W. testified that he remembered speaking with CPS caseworkers regarding the allegations of sexual abuse and that there had been an investigation. He was not aware, however, that the investigation had concluded without an affirmative finding of sexual abuse. C.W. was also not aware that Appellant had been indicted for sexual assault in 2006 based on his outcry or that the indictment was ultimately dismissed. C.W. expressed that he did not believe Appellant was a monster and that, despite the sexual abuse, he loved Appellant.

### 2. *C.W. – Appellant's Adult Daughter*

C.W. was thirty-three years old when she testified. Appellant is also C.W.'s father. C.W. testified that Appellant began molesting her at a very young age, although she could not recall precisely when. She knew that when she was around

age nine, she had an operation to remove a brain tumor, and she stated she was able to use that memorable event as a milestone for recalling the approximate time periods during which Appellant abused her during her childhood. C.W. recalled incidents that occurred before the operation, when she was around age nine, whereby Appellant inappropriately touched her; however, Appellant did not physically penetrate her.

When C.W. was around age eleven, in addition to his usual molestations, Appellant began forcing her to perform oral sex on him, as well as on her brother, who was around age eight or nine at the time, while Appellant watched and directed them. C.W. testified that Appellant also had vaginal intercourse with her at least six times—she would mark on the wall after each time it happened—and penetrated her vaginally with other items, such as sex toys and a soda bottle. Appellant brought other men from his shop to sexually abuse her and forced her to engage in oral, vaginal, and anal sex with them. According to C.W., she visited a doctor at age fourteen and, while there, overheard the doctor tell her foster mother that because so much scar tissue had developed on C.W.'s uterus, she would never be able to carry a pregnancy to term.

C.W. testified that she first outcried about Appellant's sexual abuse when she was in fifth grade. After she told her mother about the sexual abuse, her mother spoke to Appellant's mother, and they determined that Appellant's mother would speak with him about the allegations. But, C.W. testified that nothing was ever done. After she outcried to a counselor at school, the police were notified, and C.W. and her brother were removed from Appellant's home. Irrespective of the doctor's earlier diagnosis, C.W. testified that she now has a four-year-old son.

During cross-examination, C.W. testified that she has been in contact with Appellant in recent years, both to rekindle a father–daughter relationship and to face her fears. Appellant's trial counsel introduced a birthday card that C.W. had given

to Appellant. The card began "From your daughter," and continued, in part, "Ever since I was a little girl, you've been such an important part of my life. I've always known I could depend on your love and support, no matter what." The card was signed, "Love always, [C.W.]" C.W. testified that although she has forgiven her father, she will never forget what he did to her.

C. *Dalton Manning's Testimony*

Appellant's trial counsel presented Dalton Manning, a friend of R.W. When Manning testified, he was nineteen years old and an inmate in the Brown County jail. Manning testified that, about three weeks before Appellant's trial commenced, R.W. confided to him via video-chat that nothing inappropriate had occurred between her and Appellant. According to Manning, R.W. told him that she made her outcry and the allegations against Appellant because she is afraid of her mother. Manning wrote a letter to Appellant's trial counsel, which the trial court admitted, detailing the conversation he had with R.W.

During cross-examination, Manning stated that R.W. told him that her mother physically abuses her. Manning also testified that he believed that people lie about being sexually assaulted. He also admitted that he was currently confined for being charged with sexual assault of a young child.

D. *Appellant's Testimony*

Appellant acknowledged that, in 2002, his children (C.W. and C.W.) accused him of sexually assaulting them, but the subsequent investigation was closed because the investigation could not confirm their accusations. In 2006, Appellant was convicted and imprisoned for the felony offense of manufacture of a controlled substance, for which he was on parole at the time of the trial. In addition to his drug conviction, Appellant was also charged with sexually assaulting his children (C.W. and C.W.), but the charges were later dismissed. Appellant stated that his son (C.W.) had run away at the time these charges were filed and had told Appellant's trial

7

counsel that none of the allegations of sexual abuse were true. He further asserted that his children were removed from his home in 2003 only because of a drug raid by law enforcement that was performed at his house.

Appellant testified that after he was released from prison and placed on parole, he lived with Wilder, his daughter (C.W.), and Wilder's sons in Bangs, and that R.W. and her half-sister would visit them on the weekends. He testified that R.W.'s mother would bring R.W. over to his house on the weekends. R.W. would often spend the night at the neighbor's house with her friend. Appellant confirmed that R.W. also sometimes slept at his house on the couch in the living room.

In January of 2017, Appellant suffered a significant burn at his workplace that resulted in his hospitalization. Appellant related that Wilder refused to allow R.W.'s mother to see him while he was hospitalized in Brownwood. Appellant was later transferred to Parkland Hospital in Dallas; Wilder followed the transport in Appellant's truck. When Appellant arrived at Parkland, R.W. and her mother were there waiting for him. Appellant explained that he spent the rest of 2017 recovering from that burn injury.

Appellant denied permitting alcohol in his house when children were present. He stated that he once caught his daughter (C.W.) and her friend smoking marihuana at his house. He denied giving the marihuana to them. He also denied offering to give any of the children gifts or special treatment in exchange for sexual favors. According to Appellant, when his male co-workers would come over to his house, the children would leave and be sent to their grandmother's home.

During cross-examination, Appellant admitted that R.W. did not always sleep at her friend's house when she visited but would sometimes sleep at his house. He denied ever molesting R.W. and explained he would be afraid to because R.W.'s mother's family was associated with the Aryan Circle, a prison gang. Appellant claimed that he was not aware that R.W. had accused him of molesting her until a

8

law enforcement investigator asked whether Appellant had ever seen her in the shower. In fact, he claimed, he was not aware of her specific accusations until she testified during the trial.

Appellant testified that he believed his children (C.W. and C.W.) loved him but that their testimony about his sexually abusing them was not true. He explained that when his son (C.W.) testified that Appellant had personally apologized to him for sexually abusing him during his childhood, his son had simply misinterpreted the apology. Rather, Appellant stated that he apologized to his son for being a bad father and for being unfaithful to his mother.

## II. *Analysis*

### A. *Sufficiency of the Evidence*

In his first issue, Appellant challenges the sufficiency of the evidence that he committed multiple instances of sexual abuse against R.W. over a duration of thirty days or longer. Specifically, Appellant contends that although R.W. testified that Appellant had repeatedly sexually abused her, the evidence cannot support his conviction because she could not recall the specific dates when the abuse occurred but could only state that it occurred "almost every time" she spent the night alone with Appellant.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In conducting a sufficiency review, we consider all of the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Thus, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326, *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

The evidence need not directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt, and circumstantial evidence, alone, can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the defendant's conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we treat direct and circumstantial evidence equally, and we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

A person commits the offense of continuous sexual abuse of a young child if (1) during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, and (2) at the time of the commission of each act of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age, regardless of whether the actor knows the age of the victim at the time the offense is committed. PENAL § 21.02(b). "Sexual abuse" means an act that violates one or more penal laws as specified in Section 21.02(c), which includes the offenses of aggravated sexual assault of a child and indecency with a child by contact. *Id.* § 21.02(c)(2), (4); *see also id.* §§ 21.11(a)(1) (West 2019), 22.021(a)(1)(B). Here, the indictment alleged that Appellant committed two or more acts of sexual abuse against R.W. during a period of thirty or more days in duration, to-wit: the offenses of aggravated sexual assault of a child and indecency with a child by contact. *See id.* §§ 21.11(a)(1), 22.021(a)(1)(B)(i).

The Texas Court of Criminal Appeals has for decades recognized that child victims cannot be expected to testify with the same clarity and ability that is expected of mature and capable adults. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). Therefore, "[t]he legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.); *see Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App.—Texarkana 2010, no pet.) (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring)).

The uncorroborated testimony of a child victim is alone sufficient to support a conviction for a sexual offense. *See* CRIM. PROC. art. 38.07 (West Supp. 2021); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd); *see*

11

*also Villalon*, 791 S.W.2d at 134. Furthermore, corroboration of the victim's testimony by medical or physical evidence is not required. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.); *see Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Thus, R.W.'s testimony, without more, can be sufficient to support a conviction for continuous sexual abuse of a child. *See Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.).

"[A]lthough the exact dates of the [sexual] abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Michell*, 381 S.W.3d at 561; *see Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st. Dist.] 2011, no pet.). Here, Appellant only challenges the sufficiency of the evidence to support the duration element of the offense: he contends that R.W.'s testimony does not provide sufficient evidence for the jury to reasonably infer that the sexually abusive acts he allegedly committed against her occurred over a period of thirty days or more. Rather, according to Appellant, her testimony only enables the jury to impermissibly speculate as to the duration of the sexual abuse.

Speculation is the mere theorizing or guessing about the possible meaning of the facts and evidence presented. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 16). Conversely, "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* (quoting *Hooper*, 214 S.W.3d at 16). "Juries are permitted to draw multiple reasonable inferences from the evidence as long as each inference is supported by the evidence presented at trial[.]" *Id.* (citing *Hooper*, 214 S.W.3d at 15).

Appellant cites to two cases that we previously decided in which, although the child victims could not recall specific dates that the alleged abuses occurred, we affirmed the convictions based on other benchmarks in the victim's testimony which permitted the jury to infer that the acts of sexual abuse spanned a period of thirty days or longer. *See Soto v. State*, No. 11-19-00214-CR, 2021 WL 3235881 (Tex. App.—Eastland July 30, 2021, no pet.) (mem. op., not designated for publication); *Michell*, 381 S.W.3d 554. These benchmarks included the various addresses where the child victims lived when the different abuses occurred, the sheer number of abuses, and testimony from the victims about their ages when the acts of sexual abuse occurred. *See Soto*, 2021 WL 3235881, at *4–5; *Michell*, 381 S.W.3d at 561. Appellant contends that neither these nor other sufficient benchmarks are present in this case and that, therefore, the jury's inference that the sexual abuses occurred within the requisite statutory duration is mere speculation. We disagree.

R.W. testified that Appellant sexually abused her multiple times during the summer of 2017, and during the following school year, when she frequently visited him and stayed the night at his house. She explained that, when she stayed with him at night, she slept on a brown leather couch in the living room of Appellant's house and that this was the location where Appellant committed the sexual abuse. Although she could not recall the specific dates or the number of occasions that she was sexually abused by Appellant, R.W. remembered that the abuse occurred "almost every time" that she spent the night at Appellant's house "alone." She testified that, over the course of that summer, she stayed at Appellant's house frequently. She also testified that the sexual abuse occurred and continued during the following school year.

Wilder confirmed that R.W. stayed at Appellant's house intermittently from 2014 through 2017, sometimes for weeks or a month at a time, during the summer months, on weekends, and sometimes even when school was in session. Appellant

13

also confirmed that R.W. spent multiple nights sleeping at his house during the summer of 2017, and that she would sleep on the living room couch as she described.

Consistent with the applicable standard of review, we have reviewed the evidence in the light most favorable to the jury's verdict. R.W.'s testimony encompassed multiple acts of sexual abuse that occurred during a period that was certainly more than thirty days in duration. Further, her "abuse" timeline was at least partially corroborated by other testimony, including that of Appellant. Considered as a whole, the cumulative force of the evidence was sufficient to support the jury's finding that Appellant's repeated acts of sexual abuse against R.W. occurred during a period of thirty days or more in duration. As such, we hold that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant was guilty of the offense of continuous sexual abuse of a young child as charged in the indictment. Accordingly, we overrule Appellant's first issue.

B. *Admissibility of Article 38.37, Section 2(b) Evidence*

In his second issue, Appellant contends that the trial court abused its discretion when it failed to conduct a nondiscretionary Rule 403 balancing analysis to determine whether extraneous-offense evidence it ruled to be admissible under Article 38.37, Sections 2(a)(1)(B) and 2(b)—the testimony of Appellant's adult children (C.W. and C.W.)—was nevertheless subject to exclusion under Rule 403. The State contends that (1) Appellant waived any Rule 403 objections and (2) even if the issue was preserved for our review, the extraneous-offense evidence was admissible under Rule 403 because its probative value was not substantially outweighed by the danger of unfair prejudice. The State further contends that the trial court did not abuse its discretion when it admitted this evidence and that, even if it did err by refusing to conduct a balancing test, such error was harmless.

14

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Ruiz v. State*, 631 S.W.3d 841, 855 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019)). This standard of review also applies to a trial court's decision to admit or exclude extraneous-offense evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Barron v. State*, 630 S.W.3d 392, 410 (Tex. App.—Eastland 2021, pet. ref'd). We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable disagreement. *De La Paz*, 279 S.W.3d at 343–44; *Ruiz*, 631 S.W.3d at 856 (citing *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018)); *Barron*, 630 S.W.3d at 410. Furthermore, we will uphold a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

Although evidence of extraneous offenses or bad acts is generally inadmissible to show character conformity, under Article 38.37, Section 2(b), such evidence is admissible for any relevant purpose, including as proof of the defendant's character and propensity to act in conformity with such character, when the charged offense concerns continuous sexual abuse of a young child. CRIM. PROC. art. 38.37 §§ 2(a)(1)(B), (b); *see Deggs v. State*, 646 S.W.3d 916, 922 (Tex. App.—Waco 2022, pet. ref'd); *Ryder v. State*, 514 S.W.3d 391, 398–99 (Tex. App.—Amarillo 2017, pet. ref'd); *Harris v. State*, 475 S.W.3d 395, 398–400 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Article 38.37, Section 2(b) allows for the admission of evidence that the defendant has committed a separate offense of *a sexual nature against a child*; the "child victim" of the separate offense need not be

15

the victim of the offense for which the defendant is currently on trial. *Deggs*, 646 S.W.3d at 922; *Ryder*, 514 S.W.3d at 398–99; *Harris*, 475 S.W.3d at 398–400; *see also Belcher v. State*, 474 S.W.3d 840, 844–47 (Tex. App.—Tyler 2015, no pet.).[1]

For this type of evidence to be admissible under Article 38.37, Section 2(b), the defendant need not have been charged with, tried for, or convicted of the separate offense. *Castillo v. State*, 573 S.W.3d 869, 880–81 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). A no-billed sexual assault offense committed against a child other than the victim of the offense on trial is admissible. *Bradshaw v. State*, 466 S.W.3d

---

[1]We have consistently held that Article 38.37, Section 2(b) provides for the admissibility of such extraneous-offense evidence. *See Rojo v. State*, No. 11-17-00225-CR, 2019 WL 3731382 (Tex. App.—Eastland Aug. 8, 2019, pet. ref'd) (mem. op., not designated for publication) (the defendant was convicted of several counts of indecency with a child and evidence of other sexual offenses committed by the defendant *against other children* who were not the alleged victim at trial was properly admitted); *Perez v. State*, No. 11-17-00206-CR, 2019 WL 3227575 (Tex. App.—Eastland July 18, 2019, no pet.) (mem. op., not designated for publication) (the defendant was convicted of one count of continuous sexual abuse of a child and two counts of sexual assault and evidence of other acts of a sexual nature committed by the defendant against a child victim was admissible); *Jimenez v. State*, No. 11-17-00065-CR, 2018 WL 3580879 (Tex. App.—Eastland July 26, 2018, no pet.) (mem. op., not designated for publication) (the defendant was convicted of continuous sexual abuse of a child and evidence of other sexual offenses committed by the defendant *against the child victim and other children* was admissible); *Cornett v. State*, No. 11-16-00124-CR, 2018 WL 2437132 (Tex. App.—Eastland May 31, 2018, pet. ref'd) (mem. op., not designated for publication) (the defendant was convicted of continuous sexual abuse of a child; the defendant had a history of violent behavior toward his wife and children and had been investigated by CPS; this evidence was relevant and admissible to "paint a full picture" of the family dynamic, the child victim's state of mind, and the relationship between the defendant and the child victim; the evidence also survived a Rule 403 challenge); *Shimp v. State*, No. 11-16-00234-CR, 2017 WL 6395520 (Tex. App.—Eastland Dec. 14, 2017, no pet.) (mem. op., not designated for publication) (the defendant was convicted of indecency with a child and solicitation of prostitution and evidence of prior acts of indecency committed by the defendant, although remote, were admissible to show the defendant's propensity to commit sexual offenses; the evidence was probative and survived a Rule 403 challenge); *McKenzie v. State*, No. 11-16-00043-CR, 2017 WL 4440306 (Tex. App.—Eastland Sept. 29, 2017, pet. ref'd) (mem. op., not designated for publication) (the defendant was convicted of continuous sexual abuse of a child and evidence that the defendant had committed and was arrested for the offense of online solicitation of a minor was admissible to show the defendant's bad character); *Luvano v. State*, No. 11-14-00122-CR, 2016 WL 1725455 (Tex. App.—Eastland Apr. 21, 2016, no pet.) (mem. op., not designated for publication) (the defendant was convicted of indecency and evidence of prior acts of sexual misconduct committed by the defendant was probative and admissible to show the defendant's previous and subsequent relationship with the child victim); *Molinar v. State*, No. 11-14-00302-CR, 2016 WL 1072641 (Tex. App.—Eastland Mar. 17, 2016, no pet.) (mem. op., not designated for publication) (the defendant was convicted of indecency with a child and evidence of other crimes of sexual misconduct committed by the defendant against "children other than the victim" at trial was probative under Rule 403 and admissible).

875, 880 (Tex. App.—Texarkana 2015, pet. ref'd). Moreover, Article 38.37, Section 2(b) requires that such evidence is admissible only if the extraneous offense is one of the specific offenses enumerated in its provisions, all of which involve sexual misconduct of some sort. *Aguillen v. State*, 534 S.W.3d 701, 711–12 (Tex. App.—Texarkana 2017, no pet.) (holding that evidence of physical abuse of the victim's sisters was not admissible under Article 38.37 because it had no connection to the charged offense of indecency with a child).

Before extraneous-offense evidence may be admitted pursuant to Article 38.37, Section 2(b), the trial court must (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt, and (2) conduct a hearing out of the jury's presence for that purpose. *Ryder*, 514 S.W.3d at 399; *see* CRIM. PROC. art. 38.37, § 2-a. In this case, the nature of the challenged evidence—the testimony of Appellant's adult children—would satisfy the admissibility requirements of Article 38.37, Section 2(b). However, Appellant's complaint on appeal is not based on the trial court's alleged misapplication of Article 38.37, Section 2(b). Rather, Appellant's complaint focuses on the trial court's failure to perform a balancing analysis of the challenged evidence under Rule 403.

When evidence of a defendant's extraneous acts is determined to be relevant and admissible under Article 38.37, Section 2(b), this evidence nonetheless remains subject to exclusion under Rule 403 if a proper objection or request is presented to the trial court. *Keller v. State*, 604 S.W.3d 214, 228 (Tex. App.—Dallas 2020, pet. ref'd) (citing *Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd)); *see* TEX. R. EVID. 403. For purposes of our review, to preserve a complaint for appellate review, (1) a party must have made a timely, specific objection, request, or motion to the trial court that stated the specific grounds

for the ruling sought by the complaining party, unless the specific grounds were apparent from the context, and (2) the trial court must have either ruled or refused to rule on the request—in which case the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020).

It is clear from the context that Appellant's objection to the proffered extraneous-offense evidence was based on and limited to the balancing requirements of Rule 403; however, we agree with the State that Appellant failed to preserve his complaint for our review. During the Article 38.37, Section 2-a hearing, Appellant's trial counsel objected to the proffered extraneous-offense evidence solely on the grounds that the admission of this evidence would be overly prejudicial. In response, the trial court explicitly refused to conduct a Rule 403 balancing analysis because it did not believe that Article 38.37, Section 2(b) required it. Appellant's trial counsel then stated that she agreed with the trial court's reasoning. The State thereafter urged the trial court to determine whether the proffered extraneous-offense evidence was substantially more prejudicial than probative. The trial court refused to do so, and then asked Appellant's trial counsel if she intended to express any additional comments or suggestions on this issue—trial counsel declined. The Texas Rules of Appellate Procedure require that the complaining party must obtain a ruling on the party's asserted objection or, if the trial court refuses to rule on the objection, object to the trial court's refusal to do so. TEX. R. APP. P. 33.1(a)(2)(B). On this record, because the trial court refused to rule on Appellant's Rule 403 objection, and he did not object to the refusal, we cannot say that Appellant preserved his complaint for our review.

Nevertheless, even if we assume that Appellant had preserved his complaint for our review, although the trial court would have erred if it refused to conduct a Rule 403 balancing analysis upon a timely request, any such error would have been

harmless. The trial court's erroneous admission of evidence does not result in constitutional error; therefore, it will be disregarded if the error did not affect the defendant's substantial rights. TEX. R. APP. P. 44.2(b) (the nonconstitutional error standard); *see Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

A substantial right is implicated when the trial court's error had a substantial or injurious effect or influence in determining the jury's verdict. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014); *Garcia*, 126 S.W.3d at 927; *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In assessing the likelihood that the jury's decision was adversely affected by the claimed error, we must consider the entire record, including all the evidence presented at trial, the nature of the evidence supporting the jury's verdict, the character of the alleged error and how it might be considered together with the other evidence in the case, the trial court's instructions to the jury, and whether the evidence of the defendant's guilt is overwhelming. *Motilla v. State*, 78 S.W.3d 352, 355–58 (Tex. Crim. App. 2002); *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Further, in making that determination, we are not concerned with whether there was sufficient evidence on which the defendant could have been convicted, but rather whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the defendant's conviction. *See Lopez v. State*, 288 S.W.3d 148, 178 (Tex. App.—Corpus Christi–Edinburg 2009, pet. ref'd). Therefore, reversal is not required if, after reviewing the entire record, we have fair assurance that the error did not influence the jury's verdict or had only a slight effect. *Motilla*, 78 S.W.3d at 355; *Johnson*, 967 S.W.2d at 417.

At the outset, our harm analysis requires that we first determine if the danger of unfair prejudice substantially outweighed the probative value of the challenged evidence, and then, if it did, whether the admission of the extraneous evidence

affected the defendant's substantial rights. *See Colvin v. State,* 54 S.W.3d 82, 85 (Tex. App.—Texarkana 2001, no pet.) (addressing harm caused by the trial court's failure to conduct a Rule 403 balancing analysis).

In undertaking a Rule 403 analysis, the trial court must balance the probative force of the evidence and the State's need for it against (1) any tendency of the evidence to suggest a decision on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence would amount to undue delay. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007); *Garcia v. State*, 630 S.W.3d 264, 268 (Tex. App.—Eastland 2020, no pet.) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)); *see* TEX. R. EVID. 403. Because Rule 403 favors the admissibility of relevant evidence, it is presumed that relevant evidence will be "more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on reh'g); *see also De La Paz*, 279 S.W.3d at 343 & n.17. The intent of Rule 403 is not to exclude all evidence that tends to prejudice the opponent's case. *See Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). Rather, it only prevents the admission of evidence that promotes a jury's decision on an improper basis. *Id.*; *Montgomery*, 810 S.W.2d at 389; *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). In that light, and if a Rule 403 analysis was required, it would be necessary to determine how compelling or probative the evidence of Appellant's prior, similar conduct is as it concerns a fact of consequence. *Montgomery*, 810 S.W.2d at 391.

Notably, "[b]ecause the evidence of prior sexual abuse of children '[is] especially probative of [the defendant's] propensity to sexually assault children,' the

20

Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children." *Caston v. State*, 549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (first and third alterations in original) (quoting *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd)). In this case, the evidence of Appellant's extraneous conduct as proffered by the State, and admitted by the trial court, consisted of testimony from Appellant's adult children (C.W. and C.W.) whom he had purportedly sexually abused when they were minors. This evidence was highly probative because Appellant was charged in this case for the continuous sexual abuse of another of his children, R.W. The proffered testimony tended to (1) make a fact of consequence more probable and (2) show Appellant's motive, opportunity, and intent to commit other, similar incidents of sexually abusive conduct for which Appellant was on trial in this case—the sexual abuse of his biological children. *See De La Paz*, 279 S.W.3d at 347. The admissibility of a defendant's commission of separate, similar offenses against a minor child that are sexual in nature is precisely the purpose and scope of what Article 38.37, Section 2(b) encompasses.

Beyond these ordinarily permissible factors, the proffered evidence was also admissible under Article 38.37, Section 2(b) to show the character of Appellant and to prove that he acted in conformity with that character. CRIM. PROC. art. 38.37, § 2(b). As is often the circumstance, the direct evidence in this case of the charged offense was provided almost exclusively by the testimony of the child victim, Appellant's daughter, R.W. The State's need for presenting evidence of similar incidences of sexual abuse committed by Appellant against his other children (C.W. and C.W.) when they were minors was high and extremely important to the State's goal to establish the truthfulness of R.W.'s testimony that Appellant had repeatedly sexually abused her. Further, it is unlikely that the admission of this evidence would

confuse or distract the jury in an irrational way or would cause them to assess undue weight to this evidence or make a decision on an improper basis.

Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921. Here, none of the permissible uses of this proffered evidence under the applicable evidentiary rules—namely, Rule 403 and Article 38.37, Section 2(b)—weigh in favor of a finding of unfair prejudice; Rule 403 protects a criminal defendant against *unfair* prejudice, not just any prejudice. *See James v. State*, 623 S.W.3d 533, 549 (Tex. App.—Fort Worth 2021, no pet.) ("Evidence is not excludable under Rule 403 if it is merely prejudicial; 'all evidence against a defendant is . . . designed to be prejudicial.'" (alteration in original) (quoting *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013))); *Ruiz*, 631 S.W.3d at 865 (to be violative of Rule 403 the admitted evidence must be *unfairly* prejudicial); *see also* TEX. R. EVID. 403. Therefore, because the proffered evidence was highly probative and carried a low likelihood of unfair prejudice, the trial court would not have abused its discretion if it had performed a Rule 403 balancing analysis and in turn admitted this evidence over a Rule 403 objection.

Additionally, we note that the trial court included a limiting instruction in the guilt/innocence charge in which it addressed the jury's use and consideration of any extraneous-offense evidence admitted during that phase of the trial so as to mitigate any potential improper consideration of this evidence by the jury in deciding Appellant's guilt. Assuming, without deciding, that the jury even considered this evidence for any purpose in determining Appellant's guilt, it is presumed that a jury follows a trial court's instructions regarding the consideration of evidence. Therefore, any potential harm to Appellant would be further mitigated by the trial court's limiting instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996); *Barron*,

22

630 S.W.3d at 412–13; *Garcia v. State*, 592 S.W.3d 590, 598 (Tex. App.—Eastland 2019, no pet.); *Hung Phuoc Le v. State*, 479 S.W.3d 462, 472 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Based on the record before us, we hold that the trial court's refusal to conduct the Rule 403 balancing analysis and its subsequent decision to admit the challenged extraneous-offense evidence, even if erroneous, did not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Colvin*, 54 S.W.3d at 85–86. Accordingly, we overrule Appellant's second issue.

### III. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


October 13, 2022

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.